ation for the Iroquois, etc. And we'll hear first from Ms. Fewtt. Good morning, Your Honors. Can you hear me? Yes. Yes. Good morning, and may it please the Court, Allison Fewtt for the Appellant Iroquois Central School District. The issue before the Court today is whether a legitimate basis exists for the Court to reject the determination of the State Review Officer that the admissible evidence introduced at the impartial hearing demonstrated that the district developed and modified an appropriate educational program to meet this student's needs arising from his multifaceted disabilities and therefore afforded him a free appropriate public education. While it's undeniable that the parents were and are zealous advocates for their son, the IDEA guarantees an appropriate education, not one that provides everything that might be thought desirable by loving parents. Stated somewhat differently by the Supreme Court in its 2017 Andrew F. decision, the relevant inquiry is whether the IEP is reasonable, not whether the Court regards it as ideal. The district here worked collaboratively with the parents and devised, revised, and supplemented the services in the student's IEP to ensure that it was reasonably tailored to meet his complex needs. A critical event in the timeline of events in this case is that approximately six months before the parents unilaterally enrolled the student in a local private school, his IEP was amended to add individualized reading instruction under the Sonde Program, and that was pursuant to a consent decree between the parties dated June 2012. That resolved concerns raised by the parents approximately halfway through the student's 6th grade school year. The period from July 2012, when the student began receiving those intensive Sonde reading services during the district's summer programming through January 2012, when the parents issued their notice of intent to enroll the student at private school, is the critical period in terms of assessing whether the stipulated services were working and whether they were providing him with meaningful educational benefits. The data from the curriculum-based monitoring probes, which were actually recommended by the parents' reading consultant as a means to track his progress under the Sonde Program, which was also, by the way, recommended by the parents' consultant, those probes during that period demonstrated unequivocal progress in the student's reading fluency and his reading comprehension skills. He began the year at the 3rd grade fluency probe and went through that so quickly that he was placed on the 4th grade probe within two months. He made considerable progress as well in the 4th grade reading comprehension probe. And the parents acknowledged that the student was making progress, although they did question whether it was enough. But they also acknowledged that the student felt like he was learning while he was receiving this individualized Sonde instruction, which is consistent with the fact that during the same period of time, he achieved 9 reading levels and 12 spelling levels in the Sonde Program. These objective academic achievements are uncontradicted in the record and certainly not trivial or de minimis. They're actually quite impressive when considering that the student suffers from double deficit dyslexia, which is a more severe form than the more commonly known dyslexia. He also has poor memory skills, and it also has a below average IQ. Excuse me. You have one more minute. Your Honor, Walker authored the court's opinion in RE in 2012, which established that when the SRO reaches a different result than the IHO, the court must defer to the SRO's decision as the final decision of state authorities on matters requiring educational expertise, unless the court concludes that the SRO's decision was inadequately reasoned. Applying that precedent here, the court should find that the district court exceeded its authority in reversing the SRO, although the district court paid lip service to the deference standard and articulated supposed grounds for why the SRO was unpersuasive, it did not identify any objective flaw in the SRO's assessment of the evidence, and each reason articulated by the district court is not supported by the record. Deference or not, the district court's decision contains multiple errors, including the failure to recognize that this student has memory-related needs and also incorrectly referring to him as having an average intellect, which is undisputably not the case. The court also substituted its own credibility determinations as to the parties' respective reading intervention experts. As this court held in the Grimm case, this is impermissible. This is a clear error. The district court is not permitted to choose between the views of conflicting experts on a controversial issue of educational policy. Thank you, Ms. Few. Very much. So let me turn to my colleagues. Judge Kearse, any questions? No questions. Judge Walker? No, I have no questions. Thanks very much. We'll reserve decision, and we'll turn to the next case to be heard, which is Ms. Gorzinski. Yes, yes. Of course, of course. Sorry. Okay. Thank you, Your Honor. And I apologize. Good morning. No, no. I slipped the gear. And may it please the court, Carolyn Nugent Gorzinski for plaintiffs, appellees, RN and AN, on behalf of their son, RN, a student with a disability. I take a differing, we take a differing view as to this, the issue presented to this court. The issue presented to this court is whether the district court properly identified and stated the governing deference standard. And in doing so, did he properly apply that deference standard to the SRO's decision? And finally, after applying the proper deference standard and finding that the SRO's decision was inadequately reasoned and not supported by the record, that the district court properly deferred to the well-reasoned opinion of the IHO. This case and appeal boils down to what is the applicable deference standard when two state administrative decisions come out, one from the IHO and then from the SRO, that are different. And the Second Circuit has consistently ruled on what that deference standard is. And contrary to the district's position throughout this entire case, it is not a rubber stamping exercise. The court must independently review the basis of the determination for the SRO, meaning that the court look at the record and determine if the record supports the SRO's findings. That is precisely what the district court did here. And to be clear, we have to look at what the SRO actually held, not what the district hopes that the SRO held. The SRO held that the student was making progress prior to the 2012-2013 school year. And he decided that on two pieces of evidence. The, quote, abundance of standardized assessment evidence in the record prior to the 2012-2013 school year and the student's completion of four of seven IEP goals in the 2012-2013 school year. The SRO does not rely on curriculum-based measurements. In fact, the SRO specifically states that although those measurements can help guide a teacher's instruction, his decision was focusing on standardized assessments as the more reliable evidence in the record of student progress. This was the main thrust of the SRO's decision. The problem is the SRO's thrust was conclusory in nature. When the district court actually looked at that standardized assessment data, it didn't support what the SRO found. It was quite clear. And it was quite clear in those records. And by the way, most of those evaluators testified during hearing about their evaluations of the student. These were evaluators who evaluated the student multiple times and found that the student had progressively regressed. He was either stagnating, not making gains, or he was regressing. One of the ways we look at this, and this was detailed to the district court in an additional submission after the district filed objections to the R&R and the district court judge asked for it, is that we look at the standardized, we look at the standard score. Now, I'm not coming up with this on my own. It was the district court, it was the district's own people. It was their director of special education, as well as a school psychologist for Gao that said, look at the standard measures, look at the standard score. And if we look at that, the student is either going down in his standard score over the years, or he's staying still in nearly every single measure of reading. And that remains true even for the area where the SRO found some progress, which was in reading comprehension. But if you actually look at the standard score, it stayed the same or went down. So, it wasn't supported by the record. And the district court couldn't defer to that. It's simply not true. So, the district court also looked at IEP goals. And the problem with that was that that was not supported by the record either. The student's IEP goals had been stepped back in the year in question. The student had indisputably been working on skills that were much higher level in previous school years. Yet, in seventh grade, in 2012-2013, he had lost those skills. He had regressed. Now, we know the standard for the provision of a free appropriate public education is a program likely to produce progress, not regression. The student had demonstrated regression, and his IEP goals, which were working on skills far more elementary in nature, far less complex in nature than previous years, demonstrated the student had regressed. So, the SRO, his decision was wrong. The student had not made progress. And that was his finding. His finding was this program was basically the same as to what he had been provided, and then he was making progress in it. That's not true. So, what was the district court to do? The district court, under the deferent standards, which is not absolute, it does require that the decision be well-reasoned and supported by the record, was then to look at the IHO's decision, the other state administrative officer. And hers was well-reasoned. And hers actually did have an analysis of those nonstandardized measures, the curriculum-based measures, the grades, more analysis on the IEP goals. And she analyzed those extensively in a long decision and found that those pieces of nonstandardized assessments did not support a finding of progress. With that determination, the court had to go on and look at the program that was developed as of January 2013, which did, and the court properly recognized. You have one more minute. And the court properly recognized had some changes in it. But those changes were not enough. The district added a new reading program, but didn't describe how that was going to benefit the students. The only description of the program is basically what RABO stands for, what the acronym stands for. It didn't talk about recommendations of service levels. It didn't talk about whether that should be provided in conjunction with another program. It didn't talk about how continuing a program that the student was in for six years, Sunday was not new, it had been started in second grade, was going to do anything different than what it had. Have the students stagnate or not make progress. This student had the ability to learn. Contrary to district arguments in its papers otherwise, the parents have given detailed arguments regarding the fact that the student was found to have average intellectual abilities in measures that more accurately looked at his intelligence. He's a learning disabled student. Full scale IQs do not tell the whole story. That was detailed in the papers discussed by the district court and supported in our response. The district has repeatedly come up with these arguments that are simply not correct. They're not what the parents have argued. It's not what the SRO determined. It's not what the district court found. It's not supported. I think we have your argument. I just have a final record question. To clarify, the relief you're requesting is retroactive reimbursement of services provided during half of the academic year. Is that right? That's correct. February 1, 2013 to June 30, 2013. Correct. That's the only part of that school year that the student was placed there, and the claim was made for the 2012-2013 school year. Each claim has to be made per school year. Okay, great. Thank you very much. And then we'll hear from Ms. Fugte, who has reserved three minutes. Thank you. In response to my colleague's contention that the IHO decision here was better reasoned, that can't be the case, because the district court actually acknowledged that the IHO's decision was founded on multiple erroneous evidentiary rulings, including her improper consideration of inadmissible retrospective evidence and her corresponding failure to consider certain other services that were being offered in the IEP. And the IHO erroneously found that the academic and social grouping within the 12-1-1 classroom constituted a denial of the fate. And despite the district court in many instances adopting the IHO's views of the evidence, it never even addressed that those views had been expressly rejected by the SRO and therefore did not address why the SRO was perhaps wrong in coming to a different result. And with respect to the standardized testing, as I said on my principal argument, the critical change to the students' programming was in July of 2012. There was no relevant standardized testing from that point to when he was pulled to put into private school, and there's no dispute. Even the parents' witnesses all testified that curriculum-based measures are a legitimate and probative means and an objective means to identify whether a student is making progress. Here, the one-on-one individualized reading instruction that had been added six months prior was unequivocally leading to progress for him in multiple respects. You cannot fault the SRO for not relying on standardized testing for a period of time that it didn't exist. In addition, the IHO, in fact, reviewed that curriculum-based monitoring and found that the student made progress. And I quote, the student made progress with the Sonde System 2 instruction during the period July 2012 through January 2013. And it's incorrect for my colleague to state that the SRO did not cite to curriculum-based measures. He unequivocally cited the data that was the evaluative data that was before the CSE at the time of the January 2013 meeting, and he also recounted specifically the student's progress, which was demonstrated by the Sonde Mastery Checks, which I mentioned also on my principle argument. We're not asking, the district is not asking the court to rubber stamp the SRO. What it is asking it to do is to adhere to the precedent that this court has articulated and affirm well-reasoned conclusions that are supported by a preponderance of the evidence. Because we believe that there is no basis here to second-guess the SRO's expertise, we request that the district court's judgment be vacated and the SRO's denial of tuition reimbursement reinstated. Thank you very much, Ms. Few. Thank you both for your arguments. Well done by both sides, and we're grateful. We reserve the decision.